### Isabel Wilson *vs.* John Leishman & others.

A bill in equity alleged that the plaintiff's grandfather died intestate, and that his son, his widow, and the plaintiff, were entitled by law to all his property, in equal portions; that the intestate had deposited in banks large sums of money, in the names of other persons, who were known only to his widow; that she, intending to appropriate said money to her own use, had refused to inform the administrator of the intestate's estate concerning said money, and that he was unable to obtain or discover it; that the intestate's son instituted proceedings for an account and recovery of said money, and thereupon the widow and her second husband paid a certain sum to the son, and he released them from further claim on account of said money; that the administrator assented to this proceeding, in ignorance of the plaintiff's existence, and in the belief that the parties thereto were the only persons interested in the intestate's estate; that the administrator returned an inventory of the intestate's property, stating therein that certain sums of money, belonging to the estate, were in the hands of the intestate's widow, but that the administrator never charged himself therewith, nor accounted therefor. The prayer of the bill (among other things) was, that the widow and her second husband might answer on oath, and be decreed to pay to the administrator or to the plaintiff one third of the deceased's estate. *Held*, that the court had no jurisdiction in equity; the plaintiff having an adequate remedy at law, in the probate court.

THE plaintiff alleged in a bill in equity, that James Wilson, late of Boston, died intestate, on the 10th day of January

1842, possessed of personal estate of great value, which by law descended to Martha, his wife, (now Martha Leishman wife of John Leishman,) Thomas P. Wilson, only surviving child of said James, and the plaintiff, only child of Elizabeth P. Wilson, a deceased daughter of said James ; the said Martha, Thomas P. and the plaintiff being the only persons interested in said deceased's estate, and each of them entitled to one third part thereof : That in the year 1842, Phinehas Capen was appointed administrator of the estate of said James, and proceeded to administer the same, and filed an inventory thereof, in which it was stated that certain sums of money, belonging to said estate, were in the hands of said Martha : That the said James, at the time of his decease, was entitled to various sums of money, deposited by him, or for his account, in the Savings Banks in Boston, and elsewhere, in the name of Grace Dunlap, trustee, and in the names of other persons known only to said James and said Martha ; and that said Martha, intending to appropriate the same to her own use, refused to inform said Capen concerning the same, and would not suffer him to obtain the same ; and that he was unable to obtain or discover the same : That said Thomas P. thereupon caused proceedings to be commenced for an account and recovery of said sums of money, and that a settlement was made between him and said Martha and said Leishman, whereby said Thomas P., in consideration of receiving five hundred and seventy five dollars, to him paid, agreed to release said Martha and John from all further claim on account of said sums of money : That the plaintiff had no knowledge of said transactions at the time thereof ; and that said Capen then had no knowledge of the plaintiff's existence, and that he assented to said settlement, in the belief that said John and Martha Leishman and said Thomas P. Wilson were the only persons interested in the estate of said James : That said Capen, on the 15th day of May 1845, presented the first account of his administration of said James's estate, for allowance, wherein he charged himself with certain small sums of money received from sales of furniture and stocks, (but

made no mention of said sums of money referred to in the inventory returned by him,) and prayed allowance for moneys paid to said Martha and Thomas P., and for debts and expenses.

The bill also averred that the plaintiff did not know in whose names the aforesaid sums of money were deposited, nor the amount thereof, but that she believed the same were collected by said Martha, or by said John and Martha, and that the amount thereof was five thousand dollars; that the plaintiff was entitled to one third part of said sum, and that said one third part thereof was held in trust for her, by said John and Martha; that the plaintiff was also entitled to one third part of the balance of the aforesaid administration account; that she had requested said Capen to collect said sums of money, and to account therefor, and pay her portion to her; and that she had also requested said John and Martha to account with her, and pay to her one third part of said sums of money; but that they had refused so to do, and that they and said Capen had refused to admit her rights.

The bill also stated that the plaintiff believed that said sums of money had been withdrawn by said John, or John and Martha, and invested in real estate, so that a trust had arisen, and that said estate was held in trust, for the benefit of the plaintiff and other heirs of said James; but that she knew not where said estate was situate, nor by whom it was held, and that said John and Martha, though requested, had refused to inform her.

The prayer of the bill was for an answer under oath, and that said John and Martha might be decreed to account, and pay over said sums to said Capen, to be administered according to law, or to account with and pay over to the plaintiff one third part of the said James's estate; and that said Thomas P. might be decreed to pay over to the plaintiff one half of the money received by him of said Capen. There was also a prayer for general relief, and for process against said John Leishman, Martha Leishman, Thomas P. Wilson, and Phinehas Capen.

No service was made on Thomas P. Wilson, he being an inhabitant of New York; and Phinehas Capen, the administrator, did not appear. John Leishman and Martha Leishman demurred to the bill, and assigned the following causes of demurrer: 1st. That the plaintiff has a plain, adequate and complete remedy, at the common law, for all the grievances and injuries stated in said bill. 2d. That the bill is multifarious. 3d. That Thomas P. Wilson, named in said bill, ought, by the plaintiff's own showing in said bill, to be made a party thereto; yet he is not, by the plaintiff, made a party thereto by any service of any subpœna on him, or otherwise.

*S. D. Parker*, in support of the demurrer.

*F. C. Loring*, for the plaintiff.

HUBBARD, J. The facts stated in the bill are somewhat unusual; but they do not involve questions which are within the peculiar province of the court in the exercise of its chancery jurisdiction. It was not the intention of the legislature, by conferring equity powers upon this court, to take away or to intrench upon the jurisdiction of the probate court in the settlement of estates, but distinctly to enable this court, among other things, to enforce and regulate the execution of trusts, whether relating to real or personal estate.

In the present case, there is no averment that the ancestor of the plaintiff made a will in which he created trusts, or that he made any deed of trust for the benefit of his heirs. The bill alleges that he died intestate; and the only averment is, that he, at the time of his decease, was possessed of or entitled to various sums of money, which had been deposited by him, or for his account, in the Savings Banks or elsewhere, in the name of other persons, known only to him and his wife, and that she, intending to appropriate the same to her own use, refused to inform the administrator, and would not suffer him to obtain possession of them. The prayer of the bill then is, for an account of such moneys, and that the same may be paid over to the administrator, or that the plaintiff's distributive share may be directly paid to her. The matters thus sought to be discovered of the intestate's widow

and the account and payment sought to be enforced, are among the appropriate rights and the peculiar duties of the administrator of the estate of a deceased intestate. He is bound to inventory all the property, to obtain possession of the personal assets, to collect all the debts due to the estate, and, after payment of the debts due from the estate, to make distribution among the widow and next of kin. He is entitled, in common with an heir or creditor, to complain to the judge of probate, when he has reason to suspect that any of the estate of the deceased has been concealed, embezzled or conveyed away, so that the suspected person may be cited to appear before such judge, to be examined, on oath, upon the matter of such complaint, under penalty of imprisonment. Rev. Sts. *c.* 65, § 7. The plaintiff, in the present case, has not applied to the judge of probate, alleging her interest in the estate, as an heir, and praying for a citation to the administrator to show cause why he should not further account; but she comes immediately into this court to seek redress, in the first instance, on the ground that she has no adequate remedy at the common law.

We are clearly of opinion that the plaintiff, upon the case stated, has a full and adequate remedy in the probate court; no such settlement having taken place there as to bar her claims. The administrator may be cited in, to render an account and to make distribution to the plaintiff, as one of the heirs at law, and on refusal, without just cause, he may be sued upon his administration bond. And in case a disclosure is necessary, for any alleged embezzlement of the estate, the parties suspected may be summoned into the probate court to answer to the charge.

If the facts, as stated, shall hereafter be proved, the case is clearly within the jurisdiction of the probate court; and through that court relief may be obtained by a suit on the probate bond.

If this is a case for relief, proper for this court to sustain, as within its appropriate equity jurisdiction, then every case of a person claiming to be one of the heirs to an intestate

estate may come into this court for relief, and thus virtually transfer to this court the jurisdiction of the probate court for the distribution of estates.

It is true, that this court is expressly authorized to hear and determine, in equity, "all suits and proceedings for enforcing and regulating the execution of trusts, whether the trusts relate to real or personal estate." Rev. Sts. *c.* 81, § 8. It is also true, that a court having general equity jurisdiction will treat, as a trustee, an administrator who has property in his hands for the parties entitled according to the statutes of distribution; on the ground that the property thus held is a trust, and the enforcing of a distribution of it is the execution of a trust. *Adair* v. *Shaw*, 1 Sch. & Lef. 262. Toller on Executors, Book 3, *c.* 10, § 4. But in this Commonwealth, the power to require administrators to render accounts, and to submit to a decree of distribution of the surplus to those entitled, is expressly given to the judge of probate, and, on appeal, to the supreme court of probate; and all that is properly done in the probate court is conclusive upon the parties. The jurisdiction is not given to the supreme judicial court, as a court of equity; the legislature believing, as we may well conclude, that the probate court had adequate means, within its jurisdiction, to afford the necessary relief to parties entitled to distribution of the estates of deceased persons. *Jenison* v. *Hapgood*, 7 Pick. 7.

The counsel for the plaintiff, in support of the equity jurisdiction which we are asked to take in this case, cited *Gibbens* v. *Peeler*, 8 Pick. 254, and *Holland* v. *Cruft*, 20 Pick. 321. The former of these cases was a suit by an administrator for the recovery of certain notes belonging to the estate of the intestate, and which were alleged to be wrongfully withheld from the administrator. But the bill was sustained expressly on the *St.* of 1823, *c.* 140, § 1, which provided that in all cases where any goods or chattels, deed, bond, note, bill, specialty, writing, or other personal property of any person or persons, should be taken or detained from him or them, and secreted or withheld, so that the same could not

be found or come at, to be replevied, the justices of the supreme judicial court, on application by bill, petition or complaint, might order the same to be delivered up, or compel such discoveries and disclosures, and make such orders, &c. as equity might seem to require. In *Holland* v. *Cruft*, it was held that the defendant, as administrator with the will annexed, was a trustee for the party entitled to the share of the estate given to one of the sons of the testator, and that the trust, which was sought to be enforced, was a trust arising under the will of the testator, and so within the jurisdiction of the court.

Other cases may hereafter arise, in which executors and administrators may be held to be trustees, under the peculiar circumstances in which the property may be held. But the case at bar is but the common case of an heir claiming a distributive portion of the estate, and whose right depends on establishing the fact of being such heir, and to establish which fact no bill in equity, for an account and relief, is necessary.

Another ground has been stated for the maintenance of this bill, namely, that there are more than two parties having distinct interests in the subject of the complaint, and that a suit against the administrator, on his bond, and judgment against him, would not settle the respective rights of the other two parties; and that, under this bill, all questions may be settled. But we are of opinion that the rights and interests of these parties are not so distinct, but that they may be ascertained and decided in the hearing which may be had, and the decree which may be passed, in the probate court ; the amounts being ascertained, which either party has received, either directly from the administrator, or from the assets which he knowingly did not reduce to possession, and for which he may be held to account. The share of the plaintiff will be made certain ; and the amount, which the heirs will severally be liable to refund to the administrator, can also be adjusted. But how far Leishman, the husband of the widow of Wilson, may be held accountable, is not a subject upon which we give any intimation.

As we are of opinion that the bill cannot be sustained, because the plaintiff has an adequate remedy at law, it is not necessary to examine the other causes assigned for the demurrer.

*Bill dismissed, without prejudice*